UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| WAYNE KUBSCH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:11CV42-PPS |
| | ) | |
| SUPERINTENDENT, | ) | |
| Indiana State Prison, | ) | DEATH PENALTY CASE |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

Wayne Kubsch's petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 was denied in an opinion and order entered December 2, 2013, and the Clerk entered judgment accordingly. [DE 33, 34, 35.] Now before me is Kubsch's fully-briefed motion to alter or amend judgment pursuant to Fed.R.Civ.P. 59(e). [DE 36.] Such a motion "may be used to draw the district court's attention to a manifest error of law or fact or to newly discovered evidence." *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010). A Rule 59(e) motion "does not provide a vehicle for a party to...advance arguments that could and should have been presented to the district court prior to the judgment." *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000), quoting *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996).

Kubsch's motion is predicated on only one of the many grounds for relief contained in his habeas corpus petition. Kubsch contends that I erred in denying relief on Claim IV, in which he asserted that the trial court's exclusion of the videotaped prior statement of witness Amanda Buck constituted a violation of his constitutional rights entitling him to habeas relief. In particular, Claim IV invoked the Supreme Court's decision in *Chambers v. Mississippi*, 410 U.S.

284 (1973), in which the Court held that exclusion of critical evidence, even if by a correct application of state evidentiary rules, may in certain circumstances deprive a criminal defendant of a fair trial in violation of the Due Process clause, where the excluded evidence bears "persuasive assurances of trustworthiness." *Id*. at 302.

Reviewing Claim IV, I applied the deferential standard of review under 28 U.S.C. §2254(d), considering whether the Indiana Supreme Court's decision rejecting the claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. I found that the Indiana Supreme Court did not erroneously or unreasonably conclude that *Chambers* did not support relief for Kubsch. It was my view, consistent with the view of the Indiana Supreme Court, that Amanda's videotaped statement was not trustworthy because she could no longer vouch for the accuracy of her previous statement (which she didn't even remember giving) and because "contradictory 'corrective' evidence from Amanda's parents negated the trustworthiness of the videotaped statement Amanda gave shortly after the murders." [DE 33 at 35-36.]

In support of his Rule 59(e) motion, Kubsch contends that I repeatedly misstated the record by suggesting that Amanda's recorded interview was later contradicted by both of her parents, when only Amanda's mother could be said to have contradicted Amanda's earlier account. [DE 36 at 4.] What my opinion said about the role of Amanda's father in contradicting Amanda's recorded interview was accurate, and supported by citations to the record. First, on page 28 of the opinion:

> While arguing over the admissibility of the videotape the prosecution provided the court a recap of events subsequent to Amanda's initial police interview: several days after the interview, Detective Reihl was contacted by Amanda's father, Lonnie Buck, with a correction to Amanda's statement. What Amanda had

2

> earlier said about seeing the victims on the day of the murders, actually occurred the day before; Amanda had simply been mistaken. [Tr. at 3012-13.]

The cited pages of the Trial Transcript fully support my opinion's characterization of the record: "Several days later, the call came back from the father saying, no, they were mistaken. It was a different day." [Tr. at 3013.]

Later, page 70 of the opinion says:

> Recall that Riehl is the police officer who testified at the post-conviction hearing that Amanda's father Lonnie told him shortly after Amanda's initial videotaped interview that Amanda had been confusing the events of Thursday with Friday (the day of the murders). [PCR Tr. 222-23.]

My citation to the PCR transcript pages was also accurate. Here is specifically what Officer Riehl said: "He [Lonnie] called back and said that they had made a mistake, and that it was Thursday. The day before that was the day that they were thinking about." [PCR Tr. 223.] So it was accurate to say, as I did in the opinion, that *both* Amanda's mother *and* father undermined the trustworthiness of Amanda's videotaped statement. Kubsch's quarrel with my treatment of the information given by both of Amanda's parents doesn't support relief under Rule 59(e).

Kubsch also argues that "the assurances of reliability required by *Chambers v. Mississippi*, 410 U.S. 284 (1973), are present in Amanda Buck's videotaped statement." [DE 36 at 3.] Kubsch's arguments about the reliability of Amanda's videotaped interview, given when she was nine years old, focus on the statement itself to the exclusion of its later retraction by Amanda's parents. [DE 36 at 3.] That analysis of the trustworthiness of the statement does not succeed in demonstrating that the Indiana Supreme Court's contrary conclusion was unreasonable or erroneous.

3

Kubsch's attempts to make favorable comparisons to the critical evidence in *Chambers* are not particularly persuasive either. Kubsch notes that Chambers attempted to introduce evidence that a Mr. McDonald had confessed to the crime, but that McDonald's statements were "neither sworn nor subject to cross-examination." [*Id.* at 3-4.] The same was true of the nine-year-old Amanda's long-ago interview statement – it was not given under oath and was an out-of-court statement not then subjected to cross-examination. Kubsch also notes that McDonald had repudiated his prior confession. [*Id.* at 4.] Similarly, by the time of trial, Amanda could not vouch for her previous interview having been accurate at the time. Instead, she testified that she didn't remember seeing Aaron on the day of the murders, and that she "probably didn't see him" that day. [Tr. at 2983, 2985.] These comparisons fail to support Kubsch's claim that the excluded videotape "bears far more indicia of reliability" than the pivotal evidence in *Chambers*. [*Id.*] Ultimately, Kubsch merely continues to argue that the Indiana Supreme Court's decision was contrary to or an unreasonable application of *Chambers*. I have previously found that it was not, and Kubsch does not now demonstrate a "manifest error of law" in my analysis.

In rejecting Claim IV, I also concluded that even if the exclusion of the Amanda Buck videotape had been constitutional error as in *Chambers*, Kubsch failed to show that it was other than harmless error under the standard of *Brecht v. Abramson*, 507 U.S. 619, 638 (1993). The Supreme Court's decision in *Chambers* was on direct appeal, whereas "in §2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*." *Fry v. Pliler*, 551 U.S. 112, 121 (2007). Under the *Brecht* standard, an error is harmless unless it had a substantial and

injurious effect or influence in determining the jury's verdict. *Fry*, 551 U.S. at 116, citing *Brecht*, 507 U.S. at 63 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Given the "relative weakness of the excluded testimony and the availability of contradictory evidence," I was not persuaded that the exclusion of the videotape could be said to have had a substantial effect in determining the guilty verdict. [DE 33 at 37.]

I'm still not persuaded. After all, the videotaped statement was from a nine-year-old, who later testified to having no recollection of the event. What's more, had the videotaped statement by Amanda Buck been admitted at trial, the statement would have been contradicted by the Amanda's own parents who would have said that she was mistaken about the day she saw the two murder victims. Under these circumstances, I remain convinced that the exclusion of the videotaped statement – if it was error at all – did not have a substantial and injurious influence in the jury's verdict.

On this point Kubsch now tries to gain ground by comparing the excluded evidence to the case of *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). I cited *Van Arsdall* only for its identification of factors helpfully considered in determining the harmlessness of evidentiary error, not because its facts or its evidentiary issue were comparable to those in Kubsch's case. [DE 33 at 37.] *Van Arsdall* was a direct review decision in which the applicable standard was "harmless beyond a reasonable doubt" under *Chapman v. California*, 386 U.S. 18, 24 (1967), rather than the "substantial and injurious effect" standard of *Brecht*. In *Brecht*, decided after *Van Arsdall*, the Supreme Court determined that habeas relief should be narrowed by a higher standard of error, noting that "the writ of habeas corpus has historically been regarded as an extraordinary remedy, 'a bulwark against convictions that violate "fundamental fairness."'"

*Brecht*, 507 at 633, quoting *Engle v. Isaac*, 456 U.S. 107, 126 (1982), and *Wainwright v. Sykes*, 433 U.S. 72, 97 (1977) (Stevens, J., concurring).

As the Supreme Court has repeatedly observed, an error that may justify reversal on direct appeal does not necessarily support habeas corpus relief. *Brecht*, 507 at 634 (citing cases). "Granting habeas relief merely because there is a '" reasonable possibility"' that trial error contributed to the verdict...is at odds with the historic meaning of habeas corpus – to afford relief to those whom society has 'grievously wronged.'" *Id*. at 637 (internal citations omitted). In *Van Arsdall*, the Supreme Court did not itself engage in harmless error review, but remanded the case to the Delaware Supreme Court to make that determination in the first instance. Kubsch's challenge to my harmless error analysis by attempting a comparison to *Van Arsdall* fails to demonstrate any manifest error of law supporting Rule 59(e) relief. I correctly identified the *Brecht* "substantial and injurious effect" standard, and remain persuaded that it was not met by "a seven-year-old statement by a 9-year-old girl who no longer remembered making the statement," and which was now contradicted by both the girl and her parents. [DE 33 at 37.]

"The entry of a final judgment under Rule 58 is a watershed point in any litigation." *Fannon v. Guidant Corp.*, 583 F.3d 995, 1004 (7th Cir. 2009). At that point, "there is a presumption that the case is finished, and the burden is on the party who wants to upset that judgment to show the court that there is good reason to set it aside." *Hecker v. Deere & Co.*, 556 F.3d at 575, 591 (7th Cir. 2009). Kubsch has not met that burden.

ACCORDINGLY:

Petitioner Wayne Kubsch's Motion to Alter and Amend Judgment Pursuant to Fed.R.Civ.P. 59(e) [DE 36] is DENIED.

**SO ORDERED**.

ENTERED: March 24, 2014

s/ Philip P. Simon<br>
PHILIP P. SIMON, CHIEF JUDGE<br>
UNITED STATES DISTRICT COURT